# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

ENRIQUE PACHECO,                                )
                                                )
                      Petitioner,               )
                                                )
v.                                              )    **Case No. CIV 13-234-RAW-KEW**
                                                )
**JOE ALLBAUGH, DOC Director,**                 )
                                                )
                      Respondent.               )

## <u>OPINION AND ORDER</u>

This matter is before the Court on Petitioner's petition for a writ of habeas corpus

filed pursuant to 28 U.S.C. § 2254. Petitioner, a prisoner in the custody of the Oklahoma

Department of Corrections (DOC), currently is incarcerated at Cimarron Correctional Facility

in Cushing, Oklahoma. Represented by counsel, Petitioner is challenging his conviction in

Muskogee County District Court Case No. CF-2007-742 for Murder in the First Degree. He

sets forth the following grounds for relief:

   I.     Evidence insufficient to establish homicide was committed with malice
          aforethought but in heat of passion.

   II.    Trial court erred in failing to adequately instruct jury on defense of heat
          of passion, depriving Petitioner of due process and 6th and 14th
          Amendment [rights].

   III.   Discriminatory use of preemptory [sic] challenges against minority
          jurors violated Petitioner's 6th and 14th rights.

   IV.    Improperly introduced victim impact evidence during trial.

   V.     Petitioner was prejudiced due to prosecutorial misconduct in violation
          of Petitioner['s] right to a fair trial.

VI.  Jury improperly considered the appellate process in reaching it's [sic] verdict.

VII. Petitioner's counsel was ineffective in violation of the 14th and 6th Amendments.

The respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review.  The following records have been submitted to the Court for consideration in this matter:

A.  Petitioner's direct appeal brief.

B.  The State's brief in Petitioner's direct appeal.

C.  Opinion affirming Petitioner's judgment and sentence.  *Pacheco v. State*, No. F-2010 (Okla. Crim. App. July 13, 2011).

D.  Petitioner's application for post-conviction relief.

E.  Order denying Petitioner's application for post-conviction relief.

F.  Petitioner's post-conviction appeal brief to the Oklahoma Court of Criminal Appeals in Case No. PC-2012-1164.

G.  Order Denying Motion to Supplement Record and Affirming District Court's Order Denying Petitioner's Application for Post-Conviction Relief.  *Pacheco v. State*, No. PC-2012-1164 (Okla. Crim. App. May 1, 2013).

H.  Trial and motion hearing transcripts.

I.  State court record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an

2

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

The Oklahoma Court of Criminal Appeals (OCCA) set forth the facts of the case as follows:

Pacheco and the victim, Shelliegh Poorbear, were in a relationship with each other and they had an eleven-month-old child, Isaiah. In the days before the murder, the relationship between the two was troubled and Poorbear was in some type of relationship with Eric Weidower.

At about 1:00 a.m., early Sunday morning, August 12, 2007, Pacheco found Poorbear at the Weidower house. Pacheco attacked both Weidower and Poorbear. He dragged Poorbear from the house by her hair, and he was finally stopped by Sheila Weidower. When Pacheco reached his car, he pulled out a knife, pointed it toward Sheila Weidower and threatened to kill her.

Later that day, Pacheco went home and burned all of Poorbear's clothing. He called Poorbear's mother, Lisa Tiger, and told her that he had beaten up Weidower and Poorbear. He told her that Poorbear was "still alive." He asked for money, because their child did not have diapers or milk. Tiger wired $100.00 to Pacheco.

According to Pacheco's testimony, on Monday, August 13, Pacheco called Poorbear. They decided to get back together. Pacheco drove from Muskogee to Eufala, Oklahoma, to get Poorbear. The two went shopping to get Poorbear some clothes, and Pacheco used the money given him by Tiger for the clothes. Pacheco got some money from his employer and they rented a motel room in Muskogee, because Pacheco's mother would not let them live at the Pacheco house.

Pacheco and Poorbear went out to eat. During the meal, Poorbear

3

began saying that she was tired of being a mother and she became emotionally upset. They took their food and went back to the motel. They later went to a movie and returned to the motel.

While at the motel, Poorbear told Pacheco that she had been sexually active with other women and with Eric Weidower. She told Pacheco that she no longer wanted to be a mother to their son. She also complained about Pacheco's mother and her intrusion into their lives. She called Pacheco a momma's boy. They argued with each other, and Enrique testified that he "blanked out."

Enrique recalled sticking Poorbear with a knife a couple of times. He remembered driving home and telling his father that he did something bad. They contacted 911 and directed an ambulance to the motel. Police were also contacted and arrived at the motel.

They found Poorbear dead, lying in the bed. She had approximately eleven stab wounds to her body. Many of the wounds were defensive wounds to her arms and hands. She suffered two stab wounds to her abdomen which severed her aortic artery and caused her death.

*Pacheco v. State*, No. F-2010-82, slip op. at 1-3 (Okla. Crim. App. July 13, 2011) (Dkt. 11-3 at 1-3). The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

**Ground I: Sufficiency of the Evidence**

Petitioner alleges in Ground I of the petition that the evidence was insufficient to establish the homicide was committed with malice aforethought. Instead, he claims the homicide was committed in the heat of passion. Petitioner raised this claim on direct appeal, but the OCCA denied relief as follows:

The fatal flaw in Pacheco's proposition is that heat of passion manslaughter requires adequate provocation. The prosecutor reminded the jury that insulting words alone could not justify a homicide. The facts of this

4

case are eerily similar to the facts in *Marquez-Burrola v. State*, 157 P.3d 749 (Okla. Crim. App. 2007), where the defendant testified that his wife admitted to extramarital affairs, which enraged him, causing him to slit his wives [sic] throat. In *Marquez-Burrola*, and other cases, this Court has defined heat of passion manslaughter.

"Heat of passion" manslaughter requires (1) adequate provocation of the accused; (2) a resulting passion such as fear, terror, anger, rage or resentment; (3) that the homicide occurred while the passion still existed, and before the accused had a reasonable opportunity for the passion to cool; and (4) a causal connection between the provocation, passion and homicide. *McHam v. State*, 126 P.3d 662, 667 (Okla. Crim. App. 2005) (citing *Cipriano v. State*, 32 P.3d 869, 874 (Okla. Crim. App. 2001)). Adequate provocation is defined in the Uniform Jury Instructions.

> "Adequate provocation" refers to any improper conduct of the deceased toward the **defendant(s)** which naturally or reasonably would have the effect of arousing a sudden heat of passion within a reasonable person in the position of the **defendant(s)**. Generally, actions which are calculated to provoke an emotional response and ordinarily cause serious violence are recognized as adequate provocation. Actions that do not ordinarily provoke serious violence do not constitute adequate provocation. In determining whether the deceased's conduct was adequate provocation, the conduct is judged as a person of reasonable intelligence and disposition would respond to it.
>
> Mere words alone, or threats, menaces, or gestures alone, however offensive or insulting, do not constitute adequate provocation. However, words, threats, menaces, or gestures, when considered in connection with provoking conduct of the deceased, may constitute adequate provocation. Personal violence or aggression by the deceased of a nature sufficiently violent to cause or threaten to cause pain, bloodshed, or bodily harm to the **defendant(s)** may be adequate provocation.

OUJI-CR 2d 4-98 (2000) (emphasis in original). In this case there is simply no evidence of adequate provocation.

The evidence clearly indicated that Pacheco intended to kill Poorbear.

He stabbed at her at least eleven times. Many of these stab wounds were defensive wounds indicating that Poorbear tried to keep Pacheco from killing her. Pacheco inflicted fatal stab wounds to Poorbear's abdomen which caused her to bleed to death. Therefore, Pacheco's argument that the State failed to prove malice and failed to prove that the crime was not the lesser crime of heat of passion manslaughter is denied.

*Pacheco*, No. F-2010-82, slip op. at 3-5 (Dkt. 11-3). The respondent alleges the OCCA's determination of this claim was not contrary to, or an unreasonable application of, Supreme Court Law.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do

more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain Petitioner's conviction, the Court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). Under Oklahoma law, the elements of Murder in the First Degree with Malice Aforethought are:

First, the death of a human;

Second, the death was unlawful;

Third, the death was caused by the defendant;

Fourth, the death was caused with malice aforethought.

OUJI-CR 4-61 (Instruction No. 32; Dkt. 12-8 at 106).

"Malice aforethought" means a deliberate intention to take away the life of a human being. As used in these instructions, "malice aforethought" does not mean hatred, spite or ill-will. The deliberate intent to take a human life must be formed before the act and must exist at the time a homicidal act is committed. No particular length of time is required for formation of this deliberate intent. The intent may have been formed instantly before commission of the act.

OUJI CR 4-62 (Instruction No. 33; Dkt. 12-8 at 107).

The jury instruction for Manslaughter in the First Degree - Requirement for Heat of Passion (Instruction No. 37) stated:

Heat of passion exists when four requirements are proven. These requirements are:

First, adequate provocation;

> Second, a passion or an emotion such as fear, terror, anger, rage, or resentment existed in defendant;
>
> Third, the homicide occurred while the passion still existed, and before there was reasonable opportunity for the passion to cool;
>
> Fourth, there was a causal connection between the provocation, the passion and the homicide.

OUJI-CR 4-97 (Dkt. 12-8 at 111).

The jury was further instructed by Instruction No. 35 that "[a] person kills another person in the heat of passion cannot have the deliberate intent required for murder in the first degree. Thus, malice aforethought and heat of passion cannot co-exist." (OUJI-CR 4.95A; Dkt. 12-8 at 109).

After careful review, the Court finds the evidence, viewed in a light most favorable to the State, was sufficient under the standard of *Jackson v. Virginia*. The record shows that Petitioner deliberately intended to kill Ms. Poorbear, and Ms. Poorbear fought back as Petitioner stabbed her eleven times until she died. The Court further finds the OCCA's decision on this issue was not contrary to, or an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1). Furthermore, the OCCA's determination of this claim was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). This ground for habeas corpus relief fails.

**Ground II: Jury Instructions**

Petitioner next alleges the trial court erred in failing to instruct the jury on the defense of heat of passion, in violation of Petitioner's due process, Sixth, and Fourteenth Amendment rights. He maintains his defense was heat of passion, and the prosecution had the burden of

proving the absence of such passion. The respondent asserts this ground for relief presents

no basis for federal habeas corpus relief and must be denied by this Court. The OCCA

denied relief on this claim:

> . . . Pacheco complains that the trial court failed to instruct the jury that his defense was that he acted in a heat of passion. This same issue was fully discussed in *Hogan v. State*, 139 P.3d 907 (Okla. Crim. App. 2006). In the context of malice murder and heat of passion manslaughter, the instructions relevant to these two offenses, when considered together, clearly state the law. *Id.* at 922-25; *see Marquez-Burrola v. State*, 157 P.3d 749, 757 (Okla. Crim. App. 2007). Moreover, in this case, Pacheco was not able to raise a *prima facie* case showing adequate provocation, which is necessary for lesser instructions on "heat of passion" manslaughter, as discussed above. Pacheco's argument in this proposition, therefore, is unfounded.

*Pacheco*, slip op. at 5.

> "As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting *Long v. Smith*, 663 F.2d 18, 23 (6th Cir. 1981), *cert. denied*, 525 U.S. 852 (1998)); *see also Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."), *cert. denied*, 514 U.S. 1115 (1995). Thus, the burden on a petitioner attacking a state court judgment based on a refusal to give a requested jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.'" *Maes*, 46 F.3d at 984 (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

*Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999).

Upon review, the Court finds Petitioner's complaints concerning the instructions are

grounded in state law, and he has failed to show there was error so prejudicial that he was

denied a fundamentally fair trial. The Court further finds the OCCA's decision about

Petitioner's jury instructions was not contrary to or an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). This ground for habeas relief also fails.

## III. Peremptory Challenges

Petitioner alleges in Ground III that the State struck two of three African-American prospective jurors through peremptory challenges. As a result, Petitioner was tried by an all-white jury. The respondent asserts Petitioner has not demonstrated that the OCCA unreasonably applied the Supreme Court law of *Batson v. Kentucky* in denying this claim. The OCCA's decision on this issue follows:

> . . . Pacheco claims that discriminatory use of peremptory challenges by the State constituted a violation of his rights as set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986). Pacheco complains about the prosecution's use of peremptory challenges to excuse two African-American jurors. The prosecutor explained that the first juror was being excused because he was apathetic, was disheveled in dress, and was not attentive during *voir dire*. The prosecutor elected to exercise a peremptory challenge against the second juror because "he was not paying a lot of attention," made "no eye contact, he was looking around the room. And I think he was being apathetic."
>
> The *Batson* case was fully discussed in *Grant v. State*, 205 P.3d 1, 14 (Okla. Crim. App. 2009). In *Grant* this Court explained that the holding in *Batson* prohibits the use of peremptory challenges based on race. First, a defendant must make a *prima facie* showing that the prosecutor used a peremptory challenge on the basis of race by objecting and noting the apparent race of the panelist. Then the burden moves to the prosecution to articulate "a clear, reasonably specific, and race-neutral explanation" for exercising the peremptory. Once a race-neutral reason is given, the burden shifts back to the defendant who must prove discriminatory intent.
>
> We review the trial courts [sic] ruling for an abuse of discretion, as the trial court is in the best position to consider the demeanor of the panelist in question and the sincerity of the prosecutor's explanation. *Grant*, 205 P.3d at 14. Here, there was no abuse of discretion. The prosecution gave an adequate race-neutral reason, which was not disputed by defense counsel. Pacheco has not met his burden to prove any discriminatory intent.

*Pacheco*, slip op. at 6-7 (footnotes omitted).

Petitioner argues that the prosecutor's reasons for striking two African-American prospective jurors were pretextual. This Court's review of the OCCA's decision on this issue is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). This Court must "must determine 'whether it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge.'" *Black v. Workman*, 682 F.3d 880, 896 (10th Cir. 2012) (quoting *Rice v. Collins*, 546 U.S. 333, 338 (2006)). As discussed above, the state court's factual findings are presumed correct, unless rebutted by Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Even on direct review, without the deference required by [the Antiterrorism and Effective Death Penalty Act], the Supreme Court stated that a reviewing court must defer to the state trial judge's finding of no racial motivation 'in the absence of exceptional circumstances.'" *Black*, 682 F.3d at 897 (quoting *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008)).

The record shows that in response to the prosecutor's dismissal of prospective juror Jackson, defense counsel raised a *Batson* challenge (Tr. I 144). The prosecutor's response was:

> He's apathetic, disheveled in his dress. To me, he appeared to be totally--wasn't disoriented, but he was not paying attention to the voir dire as far as I'm concerned.

*Id.* Defense counsel objected, stating that the State's reasons were insufficient. *Id.* Defense counsel, however, did not contradict the prosecutor's reasons, responding instead that defense counsel thought the prosecutor's challenge was based solely on Jackson's race. *Id.*

The trial court overruled Petitioner's objection and found the prosecutor's reasons were sufficient. *Id.*

The record shows that at one point during voir dire, prospective juror Jackson was asked whether Jackson believed there was any circumstance in which a man could be violent with a female spouse for infidelity (Tr. I, 100). Jackson replied, "Yes, sir." *Id.* When the prosecutor again asked if violence was proper, Jackson then said, No, sir" (Tr. I 100-01). Regardless of whether Jackson was not paying attention or was not interested in the process, this Court finds the record supports the prosecutor's reasons for striking this prospective juror, and there was no *Batson* violation.

The prosecutor also exercised a peremptory challenge to dismiss prospective juror Bateman. *Id.* at 145-46. The prosecutor stated Bateman "was not paying a lot of attention, no eye contact, he was looking around the room" *Id.* at 146. The prosecutor also said Bateman was apathetic and "not concentrating on the evidence or the other answers of the jurors." *Id.*

Defense counsel argued that Bateman had not been asked any questions, but the prosecutor replied that he had asked questions of all potential jurors seated on the back row, including Bateman. *Id.* The record verifies the prosecutor's statement. *Id.* at 111-12. The trial court found the *Batson* standard had been met. *Id.* at 146.

This Court finds the OCCA's decision on the issue of peremptory challenges was consistent with Supreme Court law, and Petitioner has failed to establish a *Batson* violation. *See Black*, 682 F.3d at 897.

## IV.    **Victim Impact Evidence**

Petitioner alleges that during the guilt phase of trial, the State introduced testimony

from Lisa Tiger, the victim's adoptive mother, concerning the victim's burial by Ms. Tiger. Petitioner argues this evidence had no relation to his guilt, and it was introduced to prejudice the jury against him. The respondent asserts this claim presents no basis for federal habeas corpus relief and should be denied. The OCCA denied relief on the claim as follows:

> Pacheco . . . complains that Tiger was allowed to testified about adopting Poorbear and their tribal affiliations. She also was allowed to testify about the burial of Poorbear next to her father at the Pine Ridge reservation in South Dakota. They put her body in a box and transported her in the back of the SUV. There was no objection to this testimony, thus we are limited to a review for plain error only. Okla. Stat. tit. 12, § 2104. This testimony, while irrelevant to the case at hand, did not deprive Pacheco of a fair trial. *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006).

*Pacheco*, slip op. at 10.

> . . . As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered "the trial so fundamentally unfair as to constitute a denial of federal constitutional rights," *Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (quotations and citations omitted).

*Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir.), *cert. denied*, 534 U.S. 1068 (2001).

Here, the Court agrees with the OCCA that the evidence at issue was not relevant, but it did not deprive Petitioner of a fair trial. Therefore, habeas relief is not available for this state court issue.

## V.     Prosecutorial Misconduct

Petitioner alleges in Ground V that he was prejudiced by prosecutorial misconduct, violating his right to a fair trial. He specifically raises four alleged instances:

1. Used peremptory strikes in a discriminatory manner as set out in GROUND THREE.

2.  Argued facts not in evidence during voir dire, Tr. Vol. I, pages 58-68.

3.  Denigrating defense during closing argument, Tr. Vol. V pages 126-27.

4.  Inciting societal alarm and evoking sympathy for victim, Tr. V 135-37.

(Dkt. 1 at 16).  The OCCA found no merit in these claims:

> Pacheco claims . . . that prosecutorial misconduct deprived him of a fair trial.  No trial will be reversed on the allegations of prosecutorial misconduct "unless the cumulative effect was such to deprive the defendant of a fair trial." *Garrison v. State*, 103 P.3d 590, 612 (Okla. Crim. App. 2004).

> He first claims that his allegations of discriminatory peremptory challenges also constitute prosecutorial misconduct.  We found . . . that Pacheco could show no discriminatory intent, thus he cannot show prosecutorial misconduct.  Next, he claims that the prosecutor argued facts not in evidence, introduced improper hypothetical fact patterns and made inflammatory and prejudicial argument.

> The first examples Pacheco quotes are from *voir dire* where he claims that the prosecutor was attempting to persuade jurors to make up their mind and indicate their decisions prior to hearing evidence.  The only objection to these hypothetical fact patterns was made during the lunch recess, after much of the *voir dire* had taken place with no objection.  Counsel asked for a mistrial, which was denied.  However, the trial court admonished the prosecutor to only ask about facts which are relevant to the juror's ability to carry out their responsibilities.

> In as much as there were no contemporaneous objections to the prosecutor's *voir dire* questions, we are limited to review for plain error only.  In this case, there is no plain error.  There is obviously a fine line between questions intended to discover a panelists [sic] bias and questions which ask potential jurors to prejudge the case.  *See Grant v. State*, 205 P.3d 1, 13 n.14 (Okla. Crim. App. 2009).  Here the prosecutor was trying to delve into the panelists' views regarding spousal abuse, and he did not ask them to prejudge the case based on hypothetical situations not before them.

> The prosecutor's *voir dire* did not deprive Pacheco of an impartial jury.  He cannot show that he was prejudiced in any way by the prosecutor's *voir dire* in this particular case, especially in light of the fact there was no evidence

that this was a heat of passion manslaughter case.

During closing argument, Pacheco claims that the prosecutor denigrated the defense, misstated the law, and attempted to incite societal alarm and evoke sympathy for the victim. Pacheco only objected to one statement during the prosecutor's argument. Pacheco categorizes this statement under the societal alarm portion of his brief. The objection was overruled.

In this argument the prosecutor stated that,

You have that unique opportunity you may never have again, to make a difference. . . . If bad things are allowed to perpetuate, good men and women are standing by and not acting. . . . Whenever there is a degeneration into apathy, indifference, there's also a decline [in] truth, and injustice manifests and perpetuates itself. [Tr. 5, 134-35; Dkt. 12-5].

When read in context with the prosecutions [sic] entire argument, it is obvious that the argument began as a plea to the juror's [sic] to follow their oaths and follow the law and was followed by a plea to send Pacheco a message. The argument was geared toward the theme that justice in this case required a conviction for first degree murder and a sentence of life without parole. The prosecutor was rebutting defense counsel's argument against a malice murder conviction and his argument that the killing was caused because Pacheco was so enraged he was in a "heat of passion."

Both parties to a trial have a wide latitude during closing argument to discuss evidence and reasonable inferences from such evidence. Relief is warranted only where grossly improper comments affect the defendant's right to a fundamentally fair trial. *Hanson v. State*, 72 P.3d 40, 49 (Okla. Crim. App. 2003). The record is to be judged as a whole, not on isolated comments. These comments did not constitute error because they were within the wide latitude permitted during closing argument, and they were based on the evidence. *Short v. State*, 980 P.2d 1081, 1104 (Okla. Crim. App. 1999). There was no prosecutorial misconduct in this case.

*Pacheco*, slip op. at 7-9.

In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for

> application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006). The Court finds Petitioner has not made this showing.

As set forth in the discussion of Ground III, the prosecutor did not remove African-American prospective jurors in a discriminatory fashion or deny Petition a fair and impartial jury in violation of *Batson*. Therefore, the OCCA's denial of that portion of Petitioner's prosecutorial misconduct claim was not contrary to, or an unreasonable application, of Supreme Court law. *See* 28 U.S.C. § 2254(d).

Petitioner next complains that during voir dire, the prosecutor referenced specific facts of the case not yet in evidence and posed improper hypotheticals to the prospective jurors. "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991). "The scope of *voir dire* examination is a matter within the sound discretion of the trial judge and will not be disturbed . . . absent a clear showing of abuse of discretion." *United States v. Madrigal*, 43 F.3d 1367, 1372 (10th Cir. 1994), *cert. denied*, 514 U.S. 1089 (1995) (quoting *United States v. Espinosa*, 771 F.2d 1382, 1405 (10th Cir.)). "*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." *Gardner v. Galectka*, 568

16

F.3d 862, 890 (10th Cir. 2009) (quoting *Mu'Min*, 500 U.S. at 431).

> Potential jurors, however, are not expected to be totally ignorant of the facts surrounding the case. Rather, jurors are sufficiently impartial under constitutional standards if they can lay aside any preconceived opinions regarding the outcome of the case and "render a verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 723 (1961). Criminal defendants bear the burden of establishing juror partiality. *Id.*

*Goss v. Nelson*, 439 F.3d 621, 627, 634 (10th Cir. 2006). Again, this Court finds the OCCA's determination of this claim was consistent with Supreme Court law. Therefore, relief cannot be granted on this issue.

Regarding the prosecutor's closing argument, the record shows, as the OCCA found, that the entirety of the prosecutor's remarks were based on the evidence and the law, and it followed the theme that justice required a first degree murder conviction and a sentence of life without parole. The Court finds the remarks did not deny Petitioner a fair trial, and the OCCA's determination of this claim conformed to Supreme Court law.

Petitioner's claim that the prosecutor's comments incited societal alarm and evoked sympathy for the victim also fails. [T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642). "[A]fter considering all of the surrounding circumstances, including the strength of the State's case," the Court concludes there was no constitutional error in the comments, and the OCCA's decision on this issue was consistent with federal law.

## VI.  Jury Question

Petitioner next alleges the jury improperly considered the appellate process in reaching

its verdict. The jury sent a note asking, "Does a conviction of first degree murder have an automatic appeal?" The trial court replied, "You have received all the instruction necessary for you to decide this case." Petitioner alleges the trial court should have advised that the jury should not consider the appellate process in reaching a decision. The OCCA rejected this claim:

> Pacheco claims, . . . based on a note from the jury, that the jury did not take their responsibility seriously by improperly considering that the ultimate decision may be someone else's responsibility. Pacheco also complains because there is no evidence that the trial court followed the proper procedure in communicating with the jury in this case. The note sent to the trial judge read, "Does a conviction of first degree murder have a [sic] automatic appeal?" There is nothing in the record to indicate what transpired when the Court received this note other than the note itself, which contains a reply stating, "You have received all the instructions necessary for you to decide this case."

> Pacheco suffered no prejudice in the way the note was handled by the trial court. *See Smith v. State*, 157 P.3d 1155, 1172 (Okla. Crim. App. 2007) (a presumption of prejudice may be overcome when this Court is convinced that no prejudice occurred). There is nothing in this case to indicate that the jurors did not take their responsibility seriously. The trial court's response to the note sent by the jury properly indicated that the jury had all of the instructions they needed to decide the case. Further explanation of the appellate process might have resulted in more confusion to the jury, thus the trial court did not err here.

*Pacheco*, slip op. at 13-14.

The respondent alleges this ground for habeas relief should be denied, because it presents no basis for federal habeas corpus relief. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)). "Habeas corpus

is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief." *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (citing *Teague v. Looney*, 268 F.2d 506 (10th Cir. 1959)). Here, the Court finds Petitioner has failed to present an argument showing a denial of a fair trial based on the jury note, and this claim is meritless.

## VII. Ineffective Assistance of Trial Counsel

Finally, Petitioner claims his trial counsel was ineffective in failing to do the following:

1. Request instructions concerning heat of passion; lesser included offense; character evidence; instruction on "other crimes and bad acts."

2. Object to prosecutorial misconduct as set out in Ground IV.

3. Object to admission of improper and prejudicial evidence. Improper victim impact evidence as described in Ground IV.

(Dkt. 1 at 16-17). The respondent alleges the OCCA's decision on this issue, as set forth below, was not contrary to, or an unreasonable application of, Supreme Court law:

> . . . In order to prevail on an ineffective assistance claim, an appellant must show that counsel made errors so egregious that counsel was not functioning as counsel guaranteed by the Sixth Amendment, and he must show he was prejudiced by the deficient performance--that counsel's errors deprived him of a fair trial with a reliable outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).
>
> Pacheco's initial claim is that counsel was ineffective for failing to request the required instructions, which was the subject of [his claims regarding instructions on heat of passion, adequate provocation, and lesser included offense]. As we have found that there was no error in the instructions given by the trial court and Pacheco suffered no harm, he cannot show that he was prejudiced by counsel's failure to request the instructions.
>
> He next claims that counsel was ineffective for his failure to object to

prosecutorial misconduct, which was raised [in this direct appeal]. We previously found there was not misconduct, thus counsel's conduct cannot be said to be ineffective.

He lastly claims that counsel's failure to object to the admission of so-called "victim impact" evidence . . . constituted ineffective assistance of counsel. We have found that Pacheco was not prejudiced by the "victim impact" evidence . . . thus he cannot show prejudice under an ineffective assistance claim.

*Pacheo*, slip op. at 14-15.

To prove that his counsel's performance was deficient, [Petitioner] must show that his counsel "committed serious errors in light of prevailing professional norms such that his legal representation fell below an objective standard of reasonableness." *Duvall v. Reynolds*, 139 F.3d 768, 776-77 (10th Cir.) (internal quotations omitted), *cert. denied*, 525 U.S. 933 (1998). [Petitioner] "must overcome a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy." *Moore v. Reynolds*, 153 F.3d 1086, 1096 (10th Cir. 1998) (citing *Strickland*, 466 U.S. at 689), *cert. denied*, 526 U.S. 1025 (1999). To establish that counsel's deficient performance was prejudicial, [Petitioner] must also show that, but for his counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different. *See Duvall*, 139 F.3d at 777.

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

After careful review, this Court finds Petitioner has not met this burden. Petitioner's claims regarding jury instructions, prosecutorial misconduct, and victim impact evidence are meritless. Therefore, trial counsel was not ineffective in his representation with respect to these issues. Furthermore, Petitioner has failed to show he was prejudiced pursuant to *Strickland* from counsel's performance. Because the OCCA's determination of this claim was in accordance with Supreme Court law, this ground for habeas relief fails.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, the Court recommends that this action be, in all respects, dismissed and that Petitioner be denied a certificate of appealability.

**IT IS SO ORDERED** this 29th day of August, 2016.

**Dated this 29th day of August, 2016.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma